IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS SERRANO JUARBE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO.: 21-1094 (JAG) |

**OPINION AND ORDER**

Pending before the court is the United States of America's ("Defendant") motion to strike. ECF No. 98. Defendant seeks to strike two unsworn statements under the penalty of perjury (hereinafter, "unsworn statements") by Dr. Daniel Timmerman ("Dr. Timmerman"). ECF Nos. 78-4, 78-5. Dr. Timmerman is Mr. Carlos Serrano Juarbe's ("Plaintiff" or "Mr. Serrano") retained expert witness to support his medical malpractice claim against Defendant, and Dr. Timmerman's unsworn statements are attached as exhibits to support Plaintiff's opposition to Defendant's motion for summary judgment. ECF No. 77. Defendant argues that both of Dr. Timmerman's unsworn statements should be stricken because they are sham affidavits and that they present new opinions not previously disclosed in Dr. Timmerman's expert or supplemental reports (ECF No. 53-9 at 1, 12). ECF No. 98 at 1. For the reasons detailed below, Defendant's motion to strike is GRANTED IN PART and DENIED IN PART.

**I.    WHETHER DR. TIMMERMAN'S UNSWORN STATEMENTS ARE SHAM AFFIDAVITS**

Defendant first argues that Dr. Timmerman's statements are sham affidavits. ECF No. 98 at 4. Under the sham affidavit doctrine, "[w]here a party has given clear answers to unambiguous

questions in discovery, that party cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, unless there is a satisfactory explanation of why the testimony has changed." *Escribano-Reyes v. Pro. Hepa Certificate Corp.*, 817 F.3d 380, 386 (1st Cir. 2016). In other words, the sham affidavit doctrine requires that there be previous testimony under oath, such as deposition testimony or a response to an interrogatory, provided during discovery. Here, Defendant does not point to any conflicts between Dr. Timmerman's unsworn statements and his previous testimony under oath provided during discovery. While Defendant had the opportunity to produce testimony of Dr. Timmerman during discovery by deposing him, it chose not to. ECF No. 98 at 3. Because Dr. Timmerman's statements are not in conflict with any previous testimony provided during discovery, this argument cannot prosper.

## II.   WHETHER DR. TIMMERMAN'S UNSWORN STATEMENTS PRESENT NEW OPINIONS

Defendant next contends that Dr. Timmerman's unsworn statements should be stricken because they present new opinions in violation of Fed. R. Civ. P. 26. ECF No. 98 at 1–2. Rule 26 requires that expert witnesses provide a written report that includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(b). "District courts have considerable autonomy in managing discovery proceedings. This authority extends both to setting disclosure deadlines and meting out sanctions when parties fail to honor such deadlines." *Gonzalez-Rivera v. Centro Medico Del Turabo, Inc.*, 931 F.3d 23 (1st Cir. 2019) (citing *Genereux v. Raytheon Co.*, 754 F.3d 51, 59 (1st Cir. 2014); Fed. R. Civ. P. 26(a)(2)(D) (stating that expert disclosures must be made "at the times and in the sequence that the court orders")). A party's failure to timely supplement its expert report will preclude said

party from using that relevant expert information "to supply evidence on a motion . . . , unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

An opinion in Dr. Timmerman's unsworn statements will only be considered new if it is not reasonably encompassed within the contents of his expert or supplemental reports. Except for two statements,[1] Defendant argues that *all opinions* in both of Dr. Timmerman's unsworn statements should be stricken because they were not previously disclosed in his expert report. ECF No. 98 at 2–3. However, with a few exceptions, Defendant does not explicitly challenge with specificity how Dr. Timmerman's opinions are "new" when compared to those he previously disclosed in his reports. *See* ECF No. 98 at 4 n.3, ECF No. 95 at 13–16. As a result, the court will not address the opinions of Dr. Timmerman that Defendant has failed to explicitly challenge because any challenge thereof is deemed waived. *Redondo–Borges v. Dept. of Housing and Urban Development*, 421 F.3d 1, 6 (1st Cir. 2005) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). If Defendant wanted the court to explicitly address every opinion in Dr. Timmerman's unsworn statements, it should have listed every opinion in its motion to strike and provide reasons as to why each opinion is a new opinion not previously disclosed.[2] The court now addresses each of Defendant's challenges to Dr. Timmerman's unsworn statements in turn and will discuss whether they are in fact new opinions not previously alluded to in his expert report.

---

[1] The two statements are as follows: "that every male over the age of 50 should have a yearly digital rectal examination . . . and . . . that investigators found the overall diagnostic accuracy among all physicians to be 53.5%, with the accuracy for surgeons being 70.4% and that for the rest of the doctors being less than 50%, . . ." ECF No. 98 at 2–3.

[2] Regardless, all the opinions in Dr. Timmerman's unsworn statements that were not considered in this motion to strike have no bearing on the outcome of Defendant's motion for summary judgment. In other words, even if the court did address them and struck them, the outcome of Defendant's motion for summary judgment would not change.

### A. Statements in Dr. Timmerman's First Unsworn Statement (ECF No. 78-4)

Defendant first moves to strike Dr. Timmerman's statement that Plaintiff "had multiple visits complaining of rectal bleeding and rectal pain." ECF No. 78-4 at 1. However, this statement is reasonably encompassed within the notes in Dr. Timmerman's expert report where he explains that Plaintiff was "presented with rectal bleeding and 'long standing rectal discomfort'" and that Plaintiff "continued to have symptoms including bleeding, itching, and discomfort." ECF No. 53-9 at 1, 7. While Dr. Timmerman does not explicitly state that Plaintiff was complaining in his expert report, it could be reasonably inferred that Dr. Timmerman believed Plaintiff was complaining during his visits since he noted in his original report that Plaintiff had had consistent rectal problems. It is not a stretch to infer that if there is "longstanding rectal discomfort" it is because Plaintiff complained about such discomfort during a prolonged period of time. ECF No. 53-9 at 1. Because this statement is reasonably encompassed within the contents of Dr. Timmerman's expert report, it shall not be stricken.

Defendant next seeks to strike the following opinions regarding Plaintiff's refusal to participate in a rectal exam in December 2016:

> Indeed, Mr. Serrano refused a rectal exam in December of 2016, but there is no documentation to explain why he refused the exam. The exam was necessary or otherwise why would the provider offer to perform the exam. *If a necessary part of a physical exam is important, and the patient refuses, then a reason for such should be documented. Perhaps Mr. Serrano was in pain, was embarrassed, was not clean, did not understand the importance of the rectal examination. Documentation of a refusal and the reasoning for such are both essential components of the medical record.* Here, we are left with only the former and not the latter. Of note, of the myriad visits following (between 12/16 and 1/18), no documentation of refusal of a rectal exam is noted. We can only assume no rectal exam was offered [or] given, as defense counsel has pointed out, if a patient refuses, it will be documented. Yes, Mr. Serrano was a no show to some appointments. He is chronically ill and does not have readily available transportation. This occurs in my practice as well. *These are the most vulnerable patients, and they deserve ethical care which may require a provider's added attention, elevated empathy, and an enhanced understanding.* Did Mr. Serrano not feel valued or understand the importance of follow-up? *In my*

4

> *opinion, missed appointments by a chronically ill patient should be cause for introspection.*

ECF No. 78-4 at 1 (emphasis added). Because Dr. Timmerman fails to discuss or expand on the fact that Plaintiff refused a rectal exam in December 2016 in his original reports, it follows that the statements above are not reasonably encompassed within the contents in Dr. Timmerman's expert or supplemental report. While Dr. Timmerman explicitly questioned the adequacy of the hospital's documentation in his expert report, this assertion is only reasonably related to the hospital's alleged inability to document Plaintiff's medical history, not the reasons for his refusal to accept a rectal exam. ECF No. 53-9 at 6. Thus, these statements shall be stricken.

Defendant next requests to strike the following statements regarding whether Plaintiff's tumor could have been found earlier:

> If the tumor had been discovered sooner it would have been smaller, and may have had a different pathology (e.g., in situ as opposed to a frank malignancy). A rectal exam or referral to surgery anywhere between 7/2016 and 1/2018 may have revealed such. A sphincter-sparing technique could have been employed if the tumor was found sooner or was found before it became a frank malignancy. Indeed, a sphincter sparing operation was not an option for Mr. Serrano as the opportunity to catch the disease earlier was missed given the lack of rectal examination and/or referral to surgery.

ECF No. 78-4 at 1. The statements above are reasonably encompassed within the contents of Dr. Timmerman's previous reports when he mentions the possibility of Plaintiff's rectal cancer being discovered sooner:

> Because of the late presentation, the rectal cancer found on Mr. Serrano had time to invade his sphincter muscles which had to be sacrificed leaving him with a permanent colostomy. If the rectal cancer was diagnosed prior to invasion into the sphincter muscles, Mr. Serrano could have had a sphincter sparing surgery known as a Low Anterior Resection (LAR) and subsequently would have avoided permanent colostomy.

ECF No. 53-9 at 9. Thus, these statements shall not be stricken.

Defendant next seeks to strike the following statements regarding whether Plaintiff denied having rectal conditions:

> Here, the 556 days affirmed by the Defendant are the number of days between 7/05/2016 and 1/12/2018 between rectal examinations. I do not agree that the patient "denied" any bleeding or discomfort. It is well documented in the chart the patient had a "long standing history of rectal discomfort, rectal mass, rectal pain, constipation, rectal bleeding." (See page 895). Of note, *if the patient denied symptoms, why continue to treat a disease state without symptoms with multiple medications?*

ECF No. 78-4 at 2 (emphasis added). However, Dr. Timmerman stated in his original expert report that after July 5, 2016, Plaintiff continued prescriptions for topical steroids and that Plaintiff "continued to have symptoms including bleeding, itching, and discomfort." ECF No. 53-9 at 7. Hence, Dr. Timmerman's unsworn statements described above are reasonably encompassed within the contents of his original expert report. Accordingly, these statements shall not be stricken.

Defendant next moves to strike some of the following statements surrounding his visit to the emergency room ("ER") on January 12, 2018, where a doctor conducted a rectal exam but did not find a mass:

> Second, as was previously presented in my expert report, "investigators found the overall diagnostic accuracy among all physicians to be 53.5%, with the accuracy for surgeons being 70.4% and that for the rest of the doctors being less than 50%." This means the ER doctor in a benign setting had a less than 50% chance of accuracy. *In the setting of acute pain, I would opine this is even less*. . . . Mr. Serrano was diagnosed with his cancer on 3/12/2018. The Defendant's summation seems to postulate either the tumor grew from the ER visit (two months prior) where it was absent or that it could not have been detected during the 556 days prior to the ER visit. The former is highly unlikely, the latter may be the case in that the treating physicians may have missed the mass.

ECF No. 78-3 at 3 (emphasis added). The statement in italics above is not reasonably encompassed within Dr. Timmerman's previous reports because Dr. Timmerman's original reports make no mention of diagnostic accuracy dropping or falling in settings of acute pain.

6

Therefore, the portion in italics shall be stricken. With respect to the ER doctor missing the mass on January 12, 2018, Dr. Timmerman does not suggest in his reports that the rectal exam was deficient in any way. Therefore, to the extent that Dr. Timmerman is implying that the hospital committed malpractice on January 12, 2018, that aspect of his opinion shall be stricken. However, to the extent that Dr. Timmerman is explaining how the mass could have been present before the January 12, 2018, ER visit if no mass was detected at said visit, such explanation is a reasonable corollary of the assertion in his report that the abscess found on July 5, 2016, was in proximity to the mass found on March 12, 2018.

Defendant next requests to strike Dr. Timmerman's statements that "[i]f the tumor would have been found earlier, perhaps it's distal margin would have been greater or perhaps it would have not been a frank malignancy but a pre-cancerous lesion. This would greatly affect the surgical options including sphincter sparing approaches." ECF No. 78-4 at 3. However, said statements are reasonably encompassed within Dr. Timmerman's expert report where he declares the following:

> Because of the late presentation, the rectal cancer found on Mr. Serrano had time to invade his sphincter muscles which had to be sacrificed leaving him with a permanent colostomy. If the rectal cancer was diagnosed prior to invasion into the sphincter muscles, Mr. Serrano could have had a sphincter sparing surgery known as a Low Anterior Resection (LAR) and subsequently would have avoided permanent colostomy.

ECF No. 53-9 at 9. While the statements in Dr. Timmerman's unsworn statement described above contain more details regarding the possible result of Plaintiff's cancer being diagnosed earlier, said statements are still reasonably encompassed within the contents of Dr. Timmerman's expert report. Therefore, these statements shall not be stricken.

Defendant next seeks to strike the following statements regarding Plaintiff's screening colonoscopy in 2015: "This patient did have Screening Colonoscopy on 11/17/2015. . . . Tubular

adenoma is a precancerous condition. *The recommended repeat follow-up colonoscopy is in three years*. However, if the patient *exhibits symptoms prior to that, repeat examination should be considered.*" ECF No. 78-4 at 3. Regarding the statement that "[t]he recommended repeat follow-up colonoscopy is in three years," Defendant concedes that regardless of whether this statement is stricken, it is immaterial. ECF No. 78-4 at 3; ECF No. 95 at 13 n.6. The court agrees and therefore this statement will no longer be considered.[3] The remaining statement, that is, "if a patient exhibits symptoms prior to that, repeat examination should be considered," is reasonably encompassed within Dr. Timmerman's report, however, only in an excerpt from his attached literature discussing hemorrhoids: "Colonoscopy should be considered in the evaluation of any rectal bleeding that is not typical of hemorrhoids . . ." ECF No. 78-4 at 3; ECF No. 53-9 at 39. Notwithstanding, this statement shall be stricken because it is not included in the main text of Dr. Timmerman's original reports. Had Dr. Timmerman believed the standard of care for colonoscopies was relevant to Plaintiff's case, he would have explicitly mentioned so in his report.

Defendant next seeks to strike the following statements regarding Defendant's expert's literature about tumor growth:

> The expert for the Defense presented literature about the growth rate of carcinoma of the colon and rectum. The patient pool in the paper presented was treated from 1971 to 1980, the "n" was only 27 patients, the study was performed in Sweden, and the paper was published in a Swedish Journal in 1983. This study is underpowered, outdated, and was performed and published outside of the United States. Of note, the understanding of tumor biology has grown considerably from 45 years ago.

---

[3] The statement is immaterial because Plaintiff had a colonoscopy in November of 2015 and his cancer was formally diagnosed in April 2018. Therefore, even if the standard of care for follow-up colonoscopy is three years, there could be no breach of said standard because Plaintiff's cancer was discovered before he would be due for a follow up.

ECF No. 78-4 at 4. Dr. Timmerman's statements above do not add to Plaintiff's theory of negligence. Instead, they are simply contentions to rebut Defendant's expert's literature. Dr. Timmerman's criticisms of Defendant's literature are more appropriate for a direct and cross-examination setting in trial, instead of opposing a motion for summary judgment. In light of this, Dr. Timmerman should be allowed to testify about his opinions regarding Defendant's literature at trial, and therefore, these statements shall not be stricken.

Defendant next moves to strike the following statements regarding the Veteran Affairs hospital's decision not to offer Plaintiff a rectal exam when he was seen by gastrointestinal specialists for an upper endoscopy: "If considered, perhaps [Plaintiff] would have consented to the rectal examination during the upper endoscopy. This would have served to understand better the need for his continued treatment. As previously noted, a rectal examination is much better tolerated by the patient under anesthesia." ECF No. 78-4 at 5. These statements are reasonably encompassed within Dr. Timmerman's expert report where he states that Plaintiff "was scheduled for an upper endoscopy at that visit. The upper endoscopy was performed on 6/09/2017 under anesthesia. If all aspects of the care of Mr. Serrano had been well coordinated, at the upper endoscopy, an anoscopy or sigmoidoscopy could have been performed." ECF No. 53-9 at 8. Therefore, these statements shall not be stricken.

### B. Statements in Dr. Timmerman's Second Unsworn Statement (ECF No. 78-5)

Defendant seeks to strike the following statements relating to the standard of care of follow-up colonoscopies:

> A follow-up colonoscopy is recommended sooner tha[n] 10 years if polyps are found at the screening colonoscopy depending on the pathology of the polyp. A hyperplastic polyp warrants a 5-year follow-up. A tubular adenoma warrants a 3-year follow-up. A tubule-villous adenoma warrants a 2- year follow-up. A villous adenoma warrants a 1-year follow-up.

ECF No. 78-5 at 1. The statements above are not reasonably encompassed within the contents of any of Dr. Timmerman's previous reports because said reports do not mention any type of timeframes associated with colonoscopies. Therefore, the statements above are new opinions that shall be stricken.

      Finally, Defendant requests to strike the following statement regarding Dr. Timmerman's interpretation of Defendant's expert's literature: "The word 'may' suggest[s] that an APR is not always needed for tumors within 5 cm of the anal verge." ECF No. 78-5 at 2. However, just like Dr. Timmerman's criticisms of Defendant's literature concerning tumor growth, this qualification does not add to Plaintiff's theory of negligence. Instead, it is simply a challenge to Defendant's interpretation of its own literature, a matter best addressed on cross-examination. Therefore, this statement shall not be stricken. For the forgoing reasons, Defendant's motion to strike is GRANTED IN PART and DENIED IN PART.

      IT IS SO ORDERED.

      In San Juan, Puerto Rico, this 15 day of March, 2024.

                                                        s/Marcos E. López  
                                                        U.S. Magistrate Judge